474 F.3d 54
 RELIANCE INSURANCE COMPANY, a Pennsylvania Corporation Plaintiff-Appellant,
v.
POLYVISION CORPORATION, a New York Corporation, formerly known as Information Display Technology, Defendant-Third-Party-Plaintiff-Appellee,
Sovereign Commercial Group, Inc., Third-Party-Defendant-Appellee,
Pierce & Stevens Corporation, Sovereign Specialty Chemicals, Inc., and Sovereign Specialty Chemicals, L.P., Third-Party-Defendants.
docket No. 06-1717-CV.
 United States Court of Appeals, Second Circuit.
 Argued: August 28, 2006.
 Decided: January 17, 2007.
 
 Gary A. Wilson (John W. Dornberger on the brief), Post & Shell, P.C., Philadelphia, PA, for Plaintiff-Appellant.
 Michael C. Modansky, Bivona & Cohen, P.C., New York, N.Y. (James A. Gallagher, Jr., Gallagher Gosseen Faller & Crowley, Garden City, NY, on the brief), for Defendant-Third-Party-Plaintiff-Appellee.
 Steven E. Garry, Costello Shea & Gaffney LLP, New York, NY, for Third-Party-Defendant-Appellee.
 Before: WINTER, CABRANES, and POOLER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Reliance Insurance Company ("RIC"), a Pennsylvania insurance company now in liquidation, appeals from Judge Wexler's dismissal of its claims against PolyVision Corporation ("PolyVision"). RIC concededly brought the claim after the expiration of the applicable statute of limitations. However, it argues that because an identical action had been timely brought in New York state court by Reliance Insurance Company of New York ("RNY") — a company whose relation to RIC is in dispute — RIC should be given the benefit of New York's savings statute, N.Y. C.P.L.R. § 205(a) (McKinney 2003). Judge Wexler rejected this argument and held that RIC's claims were time-barred. RIC appeals that dismissal.
 
 
 2
 Whether RIC is entitled to the benefit of Section 205(a) is a threshold issue, but the outcome is not settled by any applicable New York decision. Given the interest of New York in having New York courts resolve this issue, we certify the question to the New York Court of Appeals.
 
 BACKGROUND
 
 3
 The New York Court of Appeals will have the full record on appeal before it, and we will provide only a brief summary of the relevant background. While the history of this case reveals no little confusion, the underlying claim is straightforward.
 
 
 4
 In 1987, the Lindenhurst school board contracted with Park Industries, Inc. ("Park") to perform window and curtain wall replacement for several local high schools in Suffolk County, New York. In anticipation of issuing construction surety bonds for this project, RIC and RNY had, in January of 1985, each entered into separate indemnity agreements with Park and its subcontractors, SWS Industries ("SWS") and Reading Company ("Reading"). At the time, RNY was a whollyowned subsidiary of RIC. Ultimately, RIC issued a performance bond and a labor and material payment bond insuring Park's performance of the high school and junior high school construction. RNY, on the other hand, never issued any surety bonds on the high school or junior high school projects, but did issue similar bonds with the same obligee — the Lindenhurst school board — on a different elementary school construction project.
 
 
 5
 In 1988, Park and SWS both filed for bankruptcy, and RIC executed a takeover agreement, assuming responsibility for completing the high school construction project. Prior to bankruptcy, SWS and Park had ordered 861 insulated metal curtain wall panels from Greensteel, a division of Information Display Technology, Inc. ("IDT"), a New York corporation. PolyVision, also a New York corporation, is the successor to IDT. The Greensteel panels were faulty and rusted within months of installation. Greensteel claimed the panels were installed improperly, and sold RIC replacement panels in 1991 and 1992. The new panels, however, also rusted within months, costing RIC $840,000 in replacement and labor costs.
 
 
 6
 In 1994, RNY filed suit against Greensteel in New York state court. RIC concedes that it, rather than RNY, should have been the named plaintiff in the suit, because RIC, and not RNY, issued the relevant surety bonds. No full explanation has ever been provided for this crucial mistake. Whatever the cause, the confusion continued for years, while other complexities emerged. RNY filed two amended complaints, in 1997 and 2001, the latter being filed in order to reflect a 1998 settlement between RIC and RNY on the one hand and the Lindenhurst school board on the other. After RIC and RNY were placed in liquidation in 2001, the state action was stayed until 2003, whereupon Reading attempted to intervene, claiming that a series of assignments had resulted in its inheriting the claim against PolyVision, (which by this time had become the successor-in-interest to Greensteel). Reading's attempted intervention eventually came to naught when it could not adequately demonstrate the alleged transfers of interest.
 
 
 7
 Finally, in 2004, ten years after the original filing, PolyVision moved to dismiss on the grounds that RNY was not the real party in interest. The state court granted the motion in early 2005, finding that RNY's "parent," RIC, actually issued the relevant bond, and that RNY "has no right to seek indemnification for claims paid out under such bonds." The state court order is marked "final disposition," although the court did not use the words "on the merits" or "with prejudice." At no point during the proceedings did RIC ever attempt to intervene or be substituted as plaintiff.
 
 DISCUSSION
 
 8
 Following dismissal of the state court action, RIC filed the present suit in the Eastern District. All parties acknowledge that the applicable statute of limitation has long since expired, but RIC argues it should be given the benefit of N.Y. C.P.L.R. § 205(a). That section reads:
 
 
 9
 (a) New action by plaintiff. If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.
 
 
 10
 The parties agree that the action is timely if § 205(a) applies. The district court held that § 205(a) was applicable only when "it is the same person or entity whose rights are sought to be vindicated in both actions." Reliance Ins. Co. v. Polyvision Corp., 390 F.Supp.2d 269, 273 (E.D.N.Y.2005). It concluded that "the Plaintiff, RIC, was never a party to the dismissed action and therefore may not take advantage of . . . CPLR 205." Id. at 274.
 
 
 11
 RIC argues that the district court erred by finding that it was RNY's parent and therefore an independent entity. Instead, RIC contends, the district court should have accepted its claim, purportedly made in its complaint and an accompanying exhibit, that it was RNY's successor by merger. This claim lacks merit. The accompanying exhibit and complaint, even read liberally, state only that RIC assumed RNY's surety business. However, the transactions at issue here involve RIC's surety business, not RNY's surety business. Thus, even if the district court accepted as factual the claim that RIC assumed RNY's surety business, it would have made no difference to the outcome because RNY never had any interest in this claim, and thus there is no interest to assume or succeed to.
 
 
 12
 We recognize that the district court considered allegations outside the complaint and its exhibits in resolving the Rule 12(b)(6) or Rule 12(c) motion presented to it and did so without explicitly giving notice that it was converting the Rule 12 motion to a Rule 56 motion. Under ordinary circumstances, such consideration is error. See Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir.2000) (Rule 12(b)(6)); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir.1988) (Rule 12(c)). However, we find no error here because it is clear from the record before us that RIC knew additional factual considerations were being considered and, in fact, responded with its own evidentiary submissions. See Groden v. Random House, Inc., 61 F.3d 1045, 1053 (2d Cir. 1995) (excusing failure of explicit notice because, in part, "[the non-moving part] had ample opportunity to present evidence outside the pleadings, and in fact he did so.") In addition, RIC did not object to the procedure the district court used. Even if we found error, it must be acknowledged that the error would not disadvantage RIC. As we have explained, an allegation that RIC assumed RNY's surety business does not suffice to show that RIC and RNY are effectively the same party within the meaning of § 205(a), or that RIC seeks to vindicate RNY's interests. In any case, RIC can succeed only if § 205(a) applies to actions mistakenly filed in the name of a different, related corporate entity. It is to this question we now turn.
 
 
 13
 a) NY CPLR § 205(a)
 
 
 14
 This case therefore turns on the proper interpretation of § 205(a) and, in particular, whether a different plaintiff can file a second action under § 205(a) when a related but separate plaintiff erroneously filed the first action.
 
 
 15
 We have held that "[t]he purpose of § 205(a) is to avert unintended and capricious unfairness by providing that if the first complaint was timely but was dismissed for [ ] curable reasons, the suit may be reinstituted within six months of the dismissal." Hakala v. Deutsche Bank AG, 343 F.3d 111, 115 (2d Cir.2003). The New York Court of Appeals has itself explained that "the function of [§ 205(a)] is to ameliorate the potentially harsh effect of the Statute of Limitations in certain cases in which at least one of the fundamental purposes of the Statute of Limitations has in fact been served, and the defendant has been given timely notice of the claim being asserted by or on behalf of the injured party." George v. Mt. Sinai Hosp., 47 N.Y.2d 170, 417 N.Y.S.2d 231, 390 N.E.2d 1156, 1160 (1979). Further, Judge Cardozo once cautioned that the "broad and liberal purpose" of this section "is not to be frittered away by any narrow construction." Gaines v. City of New York, 215 N.Y. 533, 109 N.E. 594 (1915).
 
 
 16
 On the one hand, therefore, the present case arguably falls within the "broad and liberal" purpose of the statute. PolyVision cannot seriously argue that it did not have notice of the claim, which is identical to the previous RNY claim in all its crucial factual particulars.[1] On the other hand, allowing RIC's claim to proceed arguably stretches § 205(a) beyond its literal language and existing New York caselaw.
 
 
 17
 Section 205(a) explicitly refers to "the plaintiff" or his "executor or administrator" — terms that arguably do not contemplate an entirely new plaintiff. In the most typical cases, § 205(a) is used to save a suit brought by an executor or administrator on behalf of the proper but deceased plaintiff. See Carrick v. Central Gen. Hosp., 51 N.Y.2d 242, 434 N.Y.S.2d 130, 414 N.E.2d 632 (1980); George v. Mt. Sinai Hosp., 417 N.Y.S.2d 231, 390 N.E.2d at 1160; Krainski v. Sullivan, 208 A.D.2d 904, 617 N.Y.S.2d 890 (2d Dep't 1994); Ballav v. Deepdale Gen. Hosp., 196 A.D.2d 520, 601 N.Y.S.2d 172 (2d Dep't 1993). Krainski includes the seemingly broad statement that "an error relating to the identity of the named plaintiff in the original action will not bar recommencement of the action pursuant to CPLR 205(a)," 208 A.D.2d at 904, 617 N.Y.S.2d 890, but Krainski was a medical malpractice suit brought by an administratrix, and all of the decisions on which it relies are of the same genre.
 
 
 18
 RIC places great reliance on Chase Manhattan Bank v. Wolowitz, 272 A.D.2d 428, 708 N.Y.S.2d 342 (2d Dep't 2000), arguing that the state court allowed Chase to file a second suit when an original suit had mistakenly been filed with a subsidiary as the plaintiff. However, the Appellate Division's opinion in Wolowitz consists of a single paragraph that does not include any description of the underlying facts. Therefore, we are unable to determine whether it supports RIC's position.
 
 
 19
 There is thus no dispositive New York decision on this issue.
 
 
 20
 b) Certification to the New York Court of Appeals
 
 
 21
 New York law and Second Circuit Rule § 0.27 allow us to certify to New York's highest court "determinative questions of New York law [that] are involved in a cause pending before [us] for which no controlling precedent of the Court of Appeals exists." 22 N.Y.C.R.R. § 500.27. In determining whether to certify a question, we consider three principal issues: (1) the absence of authoritative state court interpretation of the relevant state statute; (2) the importance of the issue to state public policy and likelihood it will recur; and (3) the capacity of certification to resolve the case. See Morris v. Schroder Capital Mgmt. International, 445 F.3d 525, 531 (2d Cir.2006); Green v. Montgomery, 219 F.3d 52, 60 (2d Cir.2000).
 
 
 22
 As discussed above, no pertinent, authoritative state court interpretation exists. Thus, the first condition is fulfilled. It is also likely that, in the future, cases will be mistakenly filed in the name of the wrong corporate subsidiary and this issue will recur. The question of whether § 205(a) applies to such a situation implicates important issues of public policy, including the proper balance between judicial expedience and the preference for a decision on the merits of a claim. Thus, the second condition is also fulfilled. Only the issue of whether the case can be disposed of without reaching the interpretation of § 205(a) remains.
 
 
 23
 Appellees set forth several arguments for why RIC's claim should be dismissed regardless of whether § 205(a) applies. First, they argue that the original state court decision was a "final judgment upon the merits," thus making § 205(a) inapplicable. Second, they argue that venue in New York is improper. Third, they argue that RIC fails to state a claim. Finally, they argue that the complaint fails to join necessary parties. None of these arguments has merit.
 
 
 24
 Under New York case law, an order need not explicitly say "on the merits," so long as it "appears from the judgment that the dismissal was on the merits." Strange v. Montefiore Hosp. and Medical Center, 59 N.Y.2d 737, 463 N.Y.S.2d 429, 450 N.E.2d 235 (1983). In the present matter, the state court marked the decision "final disposition" — because it was final with respect to the named plaintiff — but never passed on any aspect of the underlying claim against PolyVision. In a very real sense, PolyVision's argument that a dismissal because of a mistake as to the identity of the plaintiff is "on the merits" for the purposes of § 205(a) simply rephrases the question of whether § 205(a) applies in such cases. If a mistake as to the proper plaintiff is the kind of technical dismissal § 205(a) is intended to save, then it is not "on the merits." If a mistake as to the plaintiff warrants disposition "on the merits," then it is not the kind of technical dismissal § 205(a) is intended to save. Both questions must necessarily be answered at once, and should be answered by the New York Court of Appeals.
 
 
 25
 As to venue, while the allegedly faulty panels were manufactured in Pennsylvania, the underlying construction project was in Suffolk County, the panels themselves were installed and failed in Suffolk County, and Greensteel conducted an inspection of the panels in Suffolk County. Furthermore, PolyVision is a New York corporation. Under 28 U.S.C. § 1391(a), courts are not, in general, required to determine the "best venue," but merely a logical one with a substantial connection to the litigation. See Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir.1992); 15 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction and Related Matters § 3806 (2d ed.1986). The Eastern District of New York easily meets this standard.
 
 
 26
 PolyVision's arguments that RIC's complaint fails to state a claim and fails to join necessary parties similarly lack merit. While PolyVision appears to contest the validity of some of the supporting documents attached to RIC's complaint, at the pleadings stage we must accept as true the plaintiff's factual allegations and draw all reasonable inferences in its favor. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). Under this standard, RIC's complaint is more than sufficient to survive summary judgment.
 
 
 27
 Similarly, dismissal under Fed.R.Civ.P. 19(b) for failure to join indispensable parties is appropriate only where joinder of the necessary parties is "not feasible" and after "the court . . . determine[s] whether in equity and good conscience the action should proceed among the parties before [it]." Fed.R.Civ.P. 19(b); Johnson v. Smithsonian Inst., 189 F.3d 180, 188 (2d Cir.1999). PolyVision provides us with no reason to believe that joinder of additional parties, if necessary, is unfeasible, or that the action should not "in equity and good conscience" be allowed to proceed even if joinder should prove unfeasible.
 
 
 28
 We thus find that we cannot resolve this case without reaching the interpretation of § 205(a).
 
 CONCLUSION
 
 29
 We conclude that an unresolved, important, and determinative issue of state law is central to this case, and thus certification to the New York Court of Appeals is appropriate. Pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27, we certify the following question to the New York Court of Appeals:
 
 
 30
 (1) Does New York CPLR § 205(a) allow a corporation to refile an action within six months when a previous, timely-filed action has mistakenly been commenced in the name of a different, related corporate entity, and has been dismissed for naming the wrong plaintiff?
 
 
 31
 The New York Court of Appeals may, of course, reformulate or expand upon this question as it sees fit.
 
 
 32
 It is hereby ordered that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel retains jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. We order the parties to bear equally any fees and costs that may be required by the New York Court of Appeals.
 
 CERTIFICATE
 
 33
 The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27, as ordered by the Court of Appeals of the Second Circuit:
 
 
 34
 (1) Does New York CPLR § 205(a) allow a corporation to refile an action within six months when a previous, timely-filed action has mistakenly been commenced in the name of a different, related corporate entity, and has been dismissed for naming the wrong plaintiff?
 
 
 
 Notes:
 
 
 [1]
 PolyVision argues that there are new "core issues" in RIC's complaint but points only to alleged assignments of the claim, side issues that do not touch upon PolyVision's ultimate liability